ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2013 APR 23 PM 3:33

CLERK _____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| GWENDOLYN D. BIGELOW (BURCH), ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, Acting ) <br> Commissioner of Social Security ) <br> Administration,[1] ) <br> ) <br> Defendant. ) | CV 312-035 |

---

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Gwendolyn D. Bigelow ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") partially denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

---

[1] The Court takes judicial notice that on February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. Accordingly, pursuant to Fed. R. Civ. P. 25(d)(1), the Clerk is **DIRECTED** to substitute Carolyn W. Colvin as Defendant in this case.

I.  **BACKGROUND**

Plaintiff protectively applied for DIB and SSI on February 8, 2002, alleging a disability onset date of March 2, 2001. Tr. ("R."), pp. 59-62, 575. The Social Security Administration denied Plaintiff's applications initially, R. 35-39, and on reconsideration, R. 41-44. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held a hearing on April 3, 2003. R. 30. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, as well as Charles Mitchell, Plaintiff's uncle, and Mark Leaptrot, who testified as a Vocational Expert ("VE"). See id. On April 11, 2003, the ALJ issued a fully favorable decision. R. 30-34. Thereafter, however, the Appeals Council ("AC"), on its own motion, reviewed the ALJ's decision and remanded the case for further analysis by an ALJ, noting in particular that Plaintiff's complaints of ongoing pain were contradicted by the medical evidence and raised a credibility issue that was not previously addressed. R. 246-55.

Due to a number of postponements on Plaintiff's part, the hearing on remand was not held until April 5, 2006, on which date a new ALJ held a video hearing. R. 257-60, 269, 273-77, 282, 284, 518-46. At the hearing, the ALJ heard testimony from Plaintiff, who was at that point represented by her present counsel. R. 17. Although Tina Baker-Ivey, a different VE, was present at the hearing, she did not testify. Id. On April 18, 2006, the ALJ issued an unfavorable decision. R. 17-24. When the AC denied Plaintiff's request for review, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed a civil action in the United States District Court for the Southern District of Georgia requesting reversal of the adverse decision. See Bigelow v.

2

Astrue, No. CV 307-066, 2009 WL 464084, at *1 (S.D. Ga. Feb. 24, 2009). On February 24, 2009, the Honorable Dudley H. Bowen, Jr., United States District Judge, remanded the case for further consideration by an ALJ, basing its decision primarily on the previous ALJ's failure to discuss Plaintiff's medication and its possible side-effects. Id. at *5-6.

Plaintiff's third administrative hearing, which was held in person by a third ALJ, took place on October 28, 2009. R. 821. At that hearing, Plaintiff testified and continued to be represented by her present counsel. R. 576. The ALJ also heard testimony from Dennis M. O'Connor, an impartial VE. Id. On December 4, 2009, the ALJ issued a partially favorable decision.[2] R. 575-590.

Applying the sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since March 2, 2001, the alleged onset date (20 C.F.R. §§ 404.1520(b), 404.1571 *et seq.*, 404.920(b), & 416.971 *et seq.*).

2. At all times relevant to this decision, the claimant has had the following severe impairment: status post fracture of the right knee and right leg (20 C.F.R. §§ 404.1520(c) & 416.920(c)).

3. From March 2, 2001 through September 2, 2002, the period during which the claimant was disabled, the claimant did not have an impairment or combination of impairments that meets or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d) & 416.920(d)).

4. From March 2, 2001, through September 2, 2002, the claimant had the residual functional capacity ("RFC") to perform sedentary work,

---

[2]Notably, Plaintiff filed a subsequent claim for SSI payments on September 6, 2007, which was denied initially and on reconsideration. R 576, 822-23. The ALJ addressed that claim along with Plaintiff's claims on remand from the District Court in his December 4, 2009 decision. R. 576.

3

except she was unable to maintain the body postures of standing/walking while recovering from a problematic right knee fracture.[3]

5. Considering the claimant's age, education, work experience, and RFC, as well as the testimony of the VE, there were no jobs that existed in significant numbers in the national economy that the claimant could perform from March 2, 2001, through September 2, 2002 (20 C.F.R. §§ 404.1560(c), 404.1566, 416.960(c), 416.966). Therefore, the claimant was under a disability, as defined by the Social Security Act, from March 2, 2001, through September 2, 2002 (20 C.F.R. §§ 404.1520(g) & 416.920(g)).

R. 580-87.

The ALJ then determined that "medical improvement" occurred as of September 3, 2002. R. 587. Following the sequential process set forth in 20 CFR §§ 404.1594(f) and 416.994(b)(5) for determining whether a disability has ceased, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since March 2, 2001, the alleged onset date (20 C.F.R. §§ 404.1520(b), 404.1571 *et seq.*, 404.920(b), & 416.971 *et seq.*).

2. Beginning on September 3, 2002, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1594(f)(2) & 416.994(b)(5)(i)).

3. A medical improvement occurred as of September 3, 2002, the date the claimant's disability ended (20 CFR §§ 404.1594(b)(1) and 416.994(b)(1)(i)).

---

[3]"Sedentary work" is defined as work that involves:

lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a) & 416.967(a).

4

4. The medical improvement that has occurred is related to the ability to work (20 C.F.R. §§ 404.1594(b)(4)(i) & 416.994(b)(1)(iv)(A)).

5. As of September 3, 2002, the claimant continued to have a severe impairment or combination of impairments (20 CFR §§ 404.1594(f)(6) and 416.994(b)(5)(v)).

6. Beginning on September 3, 2002, the claimant has been capable of performing her past relevant work as a cashier II (20 C.F.R. §§ 404.1565 & 416.965). Also beginning on September 3, 2002, the claimant has had the RFC to perform light work[4] subject to the following limitations. A function by function analysis of the claimant's RFC reveals that the claimant can stand and walk 6 hours out of 8 hours with a sit/stand option at 30 minute intervals. She is limited to no more than occasional balancing, stooping, crouching, and climbing of stairs and ramps. She should avoid all crawling, kneeling, exposure to hazards such as unprotected heights, and all climbing of ladders, ropes, and scaffolds. Due to possible side effects from her medication, the claimant is limited to the performance of simple tasks that do not require constant, intensive interpersonal contact.

7. Beginning on September 3, 2002, considering the claimant's age, education, work experience, and RFC, as well as the testimony of the VE, the claimant has been able to perform a significant number of jobs in the national economy (20 C.F.R. §§ 404.1560(c), 404.1566, 416.960(c), 416.966). Therefore, the claimant's disability ended on September 3, 2002 (20 C.F.R. §§ 404.1594(f)(8) & 416.994(b)(5)(vii)).

R. 587-90.

When the AC denied Plaintiff's request for review, the Commissioner's decision

---

[4] "Light work" is defined as work that involves:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in t

his category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b) & 416.967(b).

became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action in the United States District Court for the Southern District of Georgia requesting reversal of the partially adverse decision. Plaintiff argues that the ALJ erred in finding that medical improvement in Plaintiff's right knee related to her ability to work. (See doc. no. 18 (hereinafter "Pl.'s Br.").) The Commissioner maintains that substantial evidence supports the ALJ's consideration of the medical opinion evidence and her decision finding medical improvement. (See doc. no. 22 (hereinafter "Comm'r's Br.").)

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such

relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

As noted above, Plaintiff's only allegation of error is her broad contention that the ALJ erred in finding that she showed medical improvement such that her disability, which concerned problems with her knee related to an injury that she sustained in a car crash on March 2, 2001, R. 72, ended on September 3, 2002.[5] (See Pl.'s Br., pp. 18-21.) First,

---

[5]In fact, the Court notes that Plaintiff's brief in support of her argument, despite being twenty-three pages long, in fact only contains approximately four pages of substantive argument (Pl.'s Br., pp. 18-21).

7

Plaintiff argues that the ALJ's selection of the September 3, 2002 date upon which he determined Plaintiff to no longer be disabled "appears to be arbitrary." (Id. at 18.) In support of that argument, Plaintiff notes that the ALJ arrived at that date by relying on medical reports prepared by James W. Price, M.D., Plaintiff's treating orthopedist, on July 12, 2002, R. 142-43, and August 15, 2002, R. 144-45, but that the ALJ mistakenly attributed a quote from Dr. Price in the July 12th report that Plaintiff was "doing extremely well" to the August 15th report. (Pl.'s Br., p. 19.) Plaintiff additionally argues that the ALJ failed to cite to any medical evidence supporting his finding that Plaintiff was not disabled as of September 3, 2002, that he gave "little to no weight" to Plaintiff's visit to the Medical College of Georgia ("MCG") for specialized treatment, that he gave no weight to Plaintiff's seventeen emergency room visits, and that he gave no weight to Plaintiff's uncle's testimony verifying Plaintiff's "pain and irritability." (Id. at 20.) The Court will address each of Plaintiff's arguments in turn.

### A. ALJ's Evidence in Support of September 3, 2002 Date

By way of background, in Dr. Price's July 12th report, Dr. Price opined, among other things, that Plaintiff's knee was "doing extremely well," that she had 90 degrees of active flexion with a -5 degree extension lag, which Dr. Price described as "very functional in nature," and that Plaintiff had no tenderness in her medial and lateral joint line. R. 142-43. Dr. Price noted, however, that, "We do understand that she will have some chronic pain." R. 143. In his August 15th report, Dr. Price noted that Plaintiff had presented complaining of pain in her right knee, but that, according to his examination, the knee was non-tender, Plaintiff had good flexion and extension, Plaintiff's extremity exam was "essentially

appropriate for her age," sensation and coordination were intact, and the "IM rod of the distal femur [had] excellent maintenance of alignment." R. 144. Dr. Price accordingly refilled Plaintiff's prescription for Lortab, advised her to discontinue any unusual activities, to ice her leg, and to follow up with him in six months. R. 145.

In his decision, the ALJ addressed Plaintiff's medical history and her appointments with various doctors and medical personnel, including Dr. Price, in considerable detail. R. 580-85. The ALJ noted that the medical evaluations of Dr. Price as well as that of Dr. David M. Hunter, M.D., leading up to Dr. Price's July and August 2002 reports indicated that Plaintiff's knee generally showed good progression of healing, but that Dr. Price had expressed concern with Plaintiff's failure to comply with her instructions regarding physical therapy in August of 2001. R. 582. However, the ALJ then found that Dr. Price's July and August of 2002 reports – as described above – indicated that Plaintiff showed significant improvement from those earlier reports such that she was no longer disabled as of September 3, 2002. R. 582, 585. In other words, as correctly argued by the Commissioner, the ALJ found that "the medical evidence for the period through September 2, 2002, clearly documented Plaintiff's limitations resulting from injuries sustained in her March 2, 2001, motor vehicle accident," but that, by September 3, 2002, in light of Dr. Price's findings that Plaintiff was "doing extremely well" and that her knee was non-tender and had good flexion and extension, Plaintiff's condition had improved. (Comm'r's Br., pp. 13-14.) Notably, given that Dr. Price is a treating orthopedist and a specialist, the ALJ was entitled to afford great weight to his opinion. See 20 C.F.R. §§ 404.1527(c) and 416.927(c); see also Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (noting that the testimony or opinion of

9

a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary). That being the case, Plaintiff's argument that the Commissioner cited to "no medical evidence" in support of his finding that Plaintiff was not disabled as of that date is simply incorrect (Pl.'s Br., p. 21), not to mention somewhat puzzling in light of the wealth of medical evidence that the ALJ discussed, R. 580-82. Martin v. Sullivan, 894 F.2d at 1529.

As to Plaintiff's argument concerning the ALJ's supposed mis-attribution of a quote from the July 2002 report to the August 2002 report, the Court finds that argument unavailing for a number of reasons. First, the ALJ did not explicitly attribute Dr. Price's July 2002 quote that Plaintiff was "doing extremely well" to the August 2002 report in particular, but instead simply addressed the two reports collectively and noted, based on those reports, that Dr. Price felt that Plaintiff was, in fact, "doing extremely well." R. 582. Moreover, given that the reports are nearly identical in terms of describing Plaintiff's objective medical condition and the progression of her healing, R. 140-45, the Court cannot find any sort of error resulting from the ALJ's decision to use Dr. Price's quote from the earlier report to sum up Plaintiff's general condition in July and August of 2002.

Similarly, the Court cannot find any error resulting from the ALJ's decision to use September 3, 2002, as opposed to some other date in the same timeframe, as the date on which Plaintiff was no longer disabled. The second of Dr. Price's reports on which the ALJ relied in making his decision was issued on August 15, 2002, R. 144, less than three weeks before September 3, 2002. Given that there are no other medical evaluations or documents speaking to Plaintiff's condition between August 15, 2002, and September 3, 2002, it follows

10

that Plaintiff's condition was unchanged following that August 15th report such that the ALJ was justified in applying the report to Plaintiff's condition on September 3rd. While the Court acknowledges that there appears to be no specific event that occurred on September 3, 2002, that might have illuminated the ALJ's reasoning in selecting that date, the fact remains that the ALJ clearly explained that his finding of improvement on that date was based on Dr. Price's reports in addition to his finding that, as explained in more detail below, the statements provided by Plaintiff, her daughter, and sister concerning the limiting effects of Plaintiff's condition were generally not credible beginning on September 3, 2002. R. 587-88. Thus, again, the Court can find no apparent harm in the ALJ's decision to use September 3, 2002, as opposed to, for instance, August 15, 2002, the date of Dr. Price's second report, as the date that Plaintiff was no longer disabled, especially given that Plaintiff has failed to make any argument as to the possible nature of such harm.

### B. ALJ's Finding that Plaintiff Was Not Credible After September 3, 2002

Next, the Court will address the ALJ's finding concerning Plaintiff's lack of credibility beginning on September 3, 2002, which speaks to Plaintiff's arguments concerning the ALJ's alleged failure to give weight to certain factors, including Plaintiff's testimony as to pain, and additionally bears on his finding that Plaintiff was no longer under a disability as of September 3, 2002. The Eleventh Circuit has established a three-part standard for evaluating a claimant's complaints of pain and other subjective symptoms. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (*per curiam*). Under the Eleventh Circuit's standard, Plaintiff must show: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged symptoms or

11

the restriction arising therefrom, or (3) that the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed restriction. Id. When discrediting subjective allegations of disabling symptoms, the ALJ must articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (*per curiam*).

"Credibility determinations are, of course, for the [Commissioner], not the courts." Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985). Moreover, this Court is required to uphold the Commissioner's credibility determination if it is supported by substantial evidence. Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980) (*per curiam*).[6] As the Eleventh Circuit explained:

> Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court. The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [his] medical condition as a whole.

Dyer, 395 F.3d at 1210-11.

Here, the ALJ explicitly addressed the issue of Plaintiff's credibility, noting that her "statements concerning the limiting effects of her symptoms are generally credible" from March 2, 2001, through September 2, 2002, R. 585, but that her statements, as well as those of her sister and daughter, "concerning the intensity, persistence and limiting effects of

---

[6]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

12

[those] symptoms are not credible beginning on September 3, 2002, to the extent they are inconsistent with the residual functional capacity assessment . . . ." R. 588. In support of his finding concerning Plaintiff's lack of credibility beginning on September 3, 2002, the ALJ cited to a number of factors that he describes as indicating the same. First, after having already addressed in detail the evaluations of the various doctors and medical personnel whom Plaintiff visited after September 3, 2002, R. 582-85, the ALJ noted that "[n]o treating, examining, or nonexamining physician supports total and permanent disability in this case, which one would expect to see in an individual who is truly disabled," R. 588. The ALJ also noted that, despite having access to low cost or no cost medical care, Plaintiff has received very little routine medical treatment and, in fact, has been noted to be noncompliant with treatment on many occasions. R. 107, 110-11, 113, 115, 141, 323, 588, 843-44. Moreover, the ALJ noted that Plaintiff's activities of daily living are inconsistent with an individual who is totally disabled, noting in particular that Plaintiff cares for her six children with little outside assistance, performs all households chores, including washing laundry, drives when necessary, and prepares simple meals for her family. Id.

In short, the ALJ clearly articulated "explicit and adequate" reasons for discrediting Plaintiff's subjective allegations of her disabling symptoms and pain, including her testimony concerning the same. Foote v. Chater, 67 F.3d 1553, 1561-62. Thus, Plaintiff's argument that the ALJ erred in failing to give weight to Plaintiff's testimony concerning pain is unavailing. Additionally, as noted above, the ALJ's finding that Plaintiff's statements concerning her limitations were not credible as of September 3, 2002, speaks directly to his finding that Plaintiff was no longer disabled as of that date.

13

## C. Plaintiff's Remaining Arguments

Plaintiff's remaining arguments, which essentially concern the ALJ's alleged failure to appropriately consider or give weight to certain factors in the record, are also unavailing. First, Plaintiff argues that the ALJ gave "little or no weight to the fact that [Plaintiff] went to the Medical College of Georgia for specialized treatment with doctors recommending manipulation of the right knee under general anesthesia . . . ." (Pl.'s Br., p. 20.) However, as pointed out by the Commissioner, the ALJ addressed Plaintiff's appointments with Dr. Hunter at MCG at great length in his decision. R. 583. In doing so, the ALJ noted that, although Plaintiff had scheduled manipulation procedures with Dr. Hunter on at least three different occasions, Plaintiff postponed or canceled the procedure on each occasion, and that she still had not had the procedure performed as of the date of his decision. R. 583-84. To the extent that Plaintiff intends to argue that considerable weight should have been given to Dr. Hunter's recommendation that Plaintiff undergo that procedure due to his role as a treating orthopedist, see Lewis v. Callahan, 125 F.3d at 1440, the Court finds that the ALJ has shown good cause as to why he did not afford that recommendation such weight, in light of his discussion of Plaintiff's failure to follow through on the appointments and her general noncompliance with treatment.[7] R. 583-84, 588.

Next, Plaintiff argues that the ALJ failed to give consideration to Plaintiff's seventeen visits to the Fairview Park Hospital emergency room seeking treatment for her knee. (Pl.'s Br., p. 20.) However, Plaintiff is simply mistaken, in that the ALJ did in fact directly address

---

[7]The testimony or opinion of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

14

and consider those emergency room visits. The ALJ first noted Dr. Hunter's comment in his July 8, 2003 report that Plaintiff was "'constantly' going to the emergency room wanting pain medications," R. 583, and then went on to note her visit to a local emergency room on September 2, 2003, during which she complained of back pain. Id. The ALJ then noted that Plaintiff "frequented a local emergency room from February 27, 2003, through February 12, 2006, for treatment of right knee pain," noting also that Plaintiff remained simultaneously under the care of two orthopedists and a primary care physician. R. 584. The ALJ further noted that the emergency room physicians advised Plaintiff to "rest, ice, and elevate her right leg," that none of the physicians indicated that those recommendations constituted permanent restrictions, and that the physicians advised Plaintiff to "return to her orthopedist and/or primary care provider for further evaluation and treatment." R. 370, 407, 421, 425, 439, 443, 447, 451-52, 456, 492, 584. In short, contrary to Plaintiff's argument, the ALJ clearly addressed and considered Plaintiff's emergency room visits in making his decision.

Finally, Plaintiff argues that the ALJ failed to give any weight to the testimony of Mr. Mitchell, Plaintiff's uncle, in arriving at his decision. (Pl.'s Br., p. 20.) The testimony to which Plaintiff refers consists of Mr. Mitchell's brief comments during the April 23, 2003 hearing, wherein he opined that Plaintiff appeared to be in pain during "most of the day" and was "very irritable." R. 510-11. However, Plaintiff fails to point to – and the Court is not aware of – any authority indicating that the ALJ was required to afford any weight whatsoever to Plaintff's uncle's lay testimony, particularly in light of the ALJ's extensive discussion as to Plaintiff's lack of credibility concerning her symptoms and his finding that Plaintiff's sister's and daughter's statements concerning the same were equally non-credible,

R. 588.

In sum, the ALJ's finding that Plaintiff was disabled from March 2, 2001, through September 2, 2002, and that she then showed improvement such that she was no longer disabled as of September 3, 2002, is supported by substantial evidence and should therefore be affirmed. Barron, 924 F.2d at 230.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 23rd day of April, 2013, at Augusta, Georgia.

_____
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE